UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

MARGARET BENDER and CHRISTINA
GUIDO,

                         Plaintiffs,

         - against -

LOCAL 1, INTERNATIONAL UNION
OF ELEVATOR CONSTRUCTORS,

                        Defendant.

-------------------------------------------------------x

'07 CIV 1 1 4 2 8

Docket No.: BRIEANT

ECF CASE

COMPLAINT

**PLAINTIFFS DEMAND
A JURY TRIAL**

Plaintiffs, **MARGARET BENDER** and **CHRISTINA GUIDO,** by their attorneys, **ROBERT DAVID GOODSTEIN, ESQ.,** complaining of the Defendant, alleges as follows:

1.     This is an action for compensatory damages and punitive damages on behalf of plaintiffs. This suit is authorized pursuant to Title VII of the Civil Rights Act of 1964 (42 USC §2000e *et. seq.*). Plaintiffs also have pendent state claims, pursuant to the New York Human Rights Law (N.Y.S. Executive Law §290 *et seq.*) and the New York City Local Law 59 of 1986 as amended by local Rule 39 for 1991 §8-101 *et seq.* Jurisdiction of this Court is invoked pursuant to 42 USC §2000e-5(f) and 28 USC§1343; 28 USC§§2201, 2002, and under the principle of pendent jurisdiction. Jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by Title VII of the Civil Rights Act of 1964 (42 USC §2000e *et. seq.*) providing for equitable and legal relief against sexual discrimination and retaliation in employment; the New York State Human Rights Law (NYS Executive Law §290 *et seq.*); and the New York City Human Rights Law, Local Law 59 of 1986 as amended by local Rule 39 for 1991 §8-101 *et seq.*

## PARTIES

2.    Plaintiff MARGARET BENDER (hereinafter "BENDER") is a female who resided in the County of Suffolk in the State of New York.   On July 15, 2005 "BENDER" filed a charge with the Equal Employment Opportunity Commission and  received a Notice of Right to Sue. (Copies of the Charge  and Notice of Right to Sue are annexed as Exhibits 1 and 2 respectively.)

3.    Plaintiff CHRISTINE GUIDO (hereinafter "GUIDO") is a female who resided in the County of Westchester in the State of New York.   On March 16, 2006,  "GUIDO" filed a charge with the Equal Employment Opportunity Commission and received a Notice of Right to Sue. (Copies of the Charge and Notice of Right to Sue are annexed as Exhibits 3 and 4 respectively).

4.    This action has been commenced within 90 days of receipt of the Notices of Right to Sue regarding the Charges.

5.    Defendant    LOCAL    1,    INTERNATIONAL    UNION    OF    ELEVATOR CONSTRUCTORS (hereinafter "LOCAL 1"), is a corporation doing business in the State of New York with an office located at 47-24 27th Street, Long Island City, New York 11101, in the County of Queens. Defendant is an employer as defined by Title VII of the Civil Rights Act of 1964. On information and belief, defendant has employed more than 15 employees in each of 20 or more calendar weeks in the current or preceding calendar year. Defendant is an Employer as defined by the New York State and/or New York City Human Rights Law as it employed 4 ore more employees.

## FACTS

A. **GUIDO**

6.    GUIDO was employed by Defendant from approximately March 2004 through to September 6, 2005 as the Office Manager/Bookkeeper.

-2-

7.    GUIDO's direct supervisor was Anthony J. Carudo, Secretary Treasurer of Defendant.

8.    On or about May 10, 2005, GUIDO was sexually assaulted by Carudo who, using a ruse, entered Ms. GUIDO's hotel room during a business trip, attempted to kiss and touch her and refused to leave her room.

9.    Upon returning to work, on May 16, 2005, GUIDO reported the incident to Local Union President and Business Manager Raymond Hernandez. Plaintiff only requested that she receive an apology from Carudo. However, Carudo issued a complete denial of the incident.

10.    Plaintiff also reported the sexual harassment to Vice-President and Business Agent Lenny Legotte.

11.    After Plaintiff lodged her formal complaint about the sexual harassment to which she was subjected by her supervisor, the work atmosphere in the office immediately changed dramatically for the worse. Union senior officials retaliated against GUIDO by calling GUIDO such discriminatory names as "f..king cunt" and "bitch" in front of her co-workers.

12.    An investigation into Plaintiff's complaint was conducted by Joseph Licata, Esq., an independent investigator hired by President Hernandez. When the report was completed the President refused to allow anyone, including GUIDO, to read it. Although GUIDO wrote to James Mets, Esq., the union's attorney, requesting a copy of the transcript of her statement along with any recommendations made by Mr. Licata, GUIDO was not informed as to whether or not the investigation had been concluded or its results.

13.    While Defendant has a sexual harassment policy is available to the union members of Local 1, Defendant does not have an anti-sexual harassment policy applicable to its employees at Local 1. Moreover, GUIDO was not informed that the policy applicable to union members was

-3-

applicable to her as an employee.

14.    Further, Defendant's policy for its members requires that the member report any sexual harassment to the Union's Secretary Treasurer, Mr. Carudo, who was the individual who sexually assaulted GUIDO.

15.    On information and belief, GUIDO was not the first female employee who was sexually harassed by Carudo.

16.    On information and belief, female members of the union had also been sexually harassed by Carudo.

17.    On information and belief, Linda Woods, a member of the union, had made a complaint to an Otis Shop Steward regarding unwelcome advances made by Carudo.

18.    Thus, although Defendant has been on notice regarding its supervisor, Carudo's sexually inappropriate activities towards both female employees and female members of the union, no action was taken.

19.    Respondent did not act to protect GUIDO from Mr. Carudo. In fact, President Hernandez informed GUIDO that he expected GUIDO to continue her job working for Carudo and nothing was to change.

20.    In retaliation for her complaints, GUIDO was constructively and actually terminated on September 6, 2005, because GUIDO could not return to work with Carudo.

21.    As a result of Defendants' actions GUIDO was subjected to disparate terms, conditions and privileges of employment.

## B. BENDER

22.     BENDER had been employed by Defendant from May 12, 2004 through to January 10, 2006 originally as the secretary/receptionist, then as the administrative secretary.

23.     BENDER worked directly for Union President Raymond Hernandez.

24.     After GUIDO's May 2005 complaint about the sexual harassment to which she was subjected by Carudo, the work atmosphere in the office immediately changed dramatically for the worse and effected other staff members, including BENDER. Moreover, it never returned to normal during the remainder of Plaintiffs Bender and Guido's employment.

25.     BENDER and her union member husband were accused of creating the story about member Linda Woods' complaints against Carudo.

26.     Union President Hernandez also accused and blamed BENDER and her husband for GUIDO going to the EEOC, which BENDER repeatedly denied..

27.     After Linda Woods had met with and spoken to President Hernandez, BENDER was entering Hernandez's office when he gave BENDER a dirty look and said to Carudo, "You think you can  f---ing trust people around here, you can't".

28.     Later that day, upon seeing BENDER standing at the receptionist's desk, the President said "Peggy come here, I want to talk to you". BENDER followed the President into the Day Room, as told, where the President screamed at BENDER for about an hour about Linda Woods and the accusations that BENDER created the story of Woods' complaint against Carudo, which BENDER repeatedly denied. The President said "the old man (former President John Green) was right, you should have your own people here, nobody else." The yelling was so loud that it was heard by other staff outside the room.

-5-

29.     Later, President Hernandez again called BENDER into his office. Also present were Vice President/Business Representative Fred McCourt and Clerk Margaret Walsh. The President informed these staff members of cha nges in the rules, which included (1) administrative staff no longer would be eligible for paid sick days, and (2) personal phone calls in or out (including family members) were now forbidden. They were also instructed not to erase phone call history.

30.     BENDER informed former Vice President Ed Krull and incoming President Lenny Legotte of the meeting and new changes.

31.     Thereafter, BENDER took a sick day and her pay was docked for the day.

32.     When BENDER asked President Hernandez if he had made these changes and docked BENDER's pay because of the Carudo/GUIDO situation, the President answered, "That's right".

33.     BENDER informed President Hernandez that she felt his actions were unfair and retaliatory and BENDER informed VP Krull and incoming President Legotte of the situation.

34.     Since it had been about fifteen months that BENDER had gone without a pay increase or a review, on Friday, BENDER again approached President Hernandez for a review. The following Monday President Hernandez called BENDER into his office where he said, "You want a your review! No money!".

35.     On December 30, 2005, BENDER addressed a letter to President Hernandez that was reviewed by Vice President Lenny Legotte, concerning the recent retaliatory conduct by Carudo toward BENDER and reiterating that BENDER had been wrongly treated since GUIDO's complaint was filed.

36.     Upon information and belief, on January 6, 2006, the EEOC attempted to contact Ms. Woods concerning the allegations against Carudo.

-6-

37.    On January 9, 2006, BENDER was informed by then President Hernandez that Hernandez was in a meeting with the counsel Jim Mets, concerning GUIDO and the EEOC.

38.    On Tuesday, January 10, 2006, BENDER was called into President Hernandez's office. Also present was the Day Secretary Gary Riefenhauser. The President stated that he had to make a decision based on financial considerations of the union, and that BENDER was going to be laid off immediately. She was told to hand in the pass and key to the office.

39.    Although BENDER was told she was being laid off "for financial reasons", four weeks earlier President Hernandez had hired receptionist Sue Noble.

40.    Secretary Treasurer Carudo left the building prior to BENDER's employment being terminated and did not return to the office until after BENDER had left the building.

41.    A few days later, incoming Union President Legotte told BENDER that she was laid off because of the "knock knock situation", referring to the EEOC charge Guido made against Carudo.

42.    BENDER's January 10, 2006 termination was in retaliation for what Local 1 believed was BENDER's assistance to or support for GUIDO who had filed a discrimination charge.

## AS AND FOR A FIRST CAUSE OF ACTION

43.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as though fully set forth herein.

44.    Plaintiff GUIDO was subjected to sexual discrimination in violation of Title VII of the Civil Rights Act of 1964 (42 USC §2000e *et seq.)*

45.    Defendant, acting in a willful and malicious manner, unlawfully discriminated and/or retaliated against Plaintiff GUIDO by terminating Guido for reporting and opposing an

-7-

unlawful discriminatory practice in violation of Title VII of the Civil Rights Act of 1964. (42 USC §2000e *et seq.)*

## AS AND FOR A SECOND CAUSE OF ACTION

46.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as though fully set forth herein.

47.    Plaintiff BENDER was subjected to retaliation for exercising her rights and for her actions which Defendant falsely believed constituted protected activity opposing discriminatory practices made unlawful by Title VII of the Civil Rights Act of 1964. (42 USC §2000e *et seq.)*

48.    Defendant, acting in a willful and malicious manner, unlawfully retaliated against Plaintiff BENDER by terminating BENDER for Defendant's belief that BENDER was assisting or opposing an unlawful discriminatory practice in violation of Title VII of the Civil Rights Act of 1964. (42 USC §2000e *et seq.)*

## AS AND FOR PLAINTIFFS' PENDENT NEW YORK STATE CLAIMS

49.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as though fully set forth herein.

50.    Defendant is an employer as that term is defined by the New York State Human Rights Law (Executive Law §290 *et seq.)*

51.    Plaintiff GUIDO was subjected to sexual discrimination and/or retaliation in consequence of her exercising her rights under the New York State law and opposing discriminatory practices made unlawful by the Human Rights Law (NYS Executive Law §290 *et seq.)*

52.    Plaintiff BENDER was subjected to discrimination and/or retaliation in consequence of her exercising her rights under the New York State law and for Defendant's beliefs that Plaintiff was opposing discriminatory practices made unlawful by the Human Rights Law (NYS Executive

Law §290 *et seq.*)

53.    Defendant, acting in a willful and malicious manner, unlawfully discriminated and/or retaliated against plaintiffs by terminating plaintiff GUIDO and BENDER for opposing an unlawful discriminatory practice in violation of Human Rights Law (NYS Executive Law §290 *et seq.*)

## AS AND FOR PLAINTIFFS' PENDENT NEW YORK CITY CLAIMS

54.    Plaintiffs repeat and reallege the allegations contained in the preceding paragraphs as though fully set forth herein.

55.    Defendant is an employer as that term is defined by the New York City Local Law 59 of 1986, as amended by local Rule 39 for 1991, §8-101 *et seq.*

56.    Plaintiff GUIDO was subjected to sexual discrimination and/or retaliation in consequence of her exercising her rights under the New York City law and opposing discriminatory practices made unlawful by the New York City Local Law 59 of 1986, as amended by local Rule 39 for 1991, §8-101 *et seq.*

57.    Plaintiff BENDER was subjected to discrimination and/or retaliation in consequence of her exercising her rights under the New York City law and for Defendant's beliefs that Plaintiff was opposing discriminatory practices made unlawful by the New York City Local Law 59 of 1986, as amended by local Rule 39 for 1991, §8-101 *et seq.*

58.    Plaintiffs have served a copy of the Complaint upon the City Commission on Human Rights and one upon the New York City Corporation Counsel.

59.    Plaintiffs have satisfied all prerequisites to filing the instant Complaint.

60.    Defendant, acting in a willful and malicious manner, unlawfully discriminated against plaintiffs because of retaliation by terminating plaintiff GUIDO for opposing an unlawful discriminatory practice in violation of New York City Local Law 59 of 1986 as amended by local

Rule 39 for 1991, §8-101 *et seq.* and for terminating plaintiff BENDER because Defendant falsely

believed plaintiff BENDER opposed an unlawful discriminatory practice as violation of the New York

City Local Law 59 of 1986 as amended by local Rule 39 for 1991, §8-101 *et seq*

**WHEREFORE**, plaintiffs demand judgment against the defendant as follows:

**On Plaintiffs' First and Second Causes of Action**

(a)   An award of back pay including all raises, promotions and benefits from September 6, 2005 to the present for GUIDO; and from January 10, 2006 to the present for BENDER;

(b)   Reinstatement of plaintiffs' employment with full seniority and promotions with commensurate salary and benefits retroactive to September 6, 2005 for GUIDO, and to January 10, 2006 to the present for BENDER;

(c)   An award of compensatory damages and/or punitive damages pursuant to Title VII of the Civil Rights Act of 1964 in an amount permitted by law ;

(d)   An award of reasonable attorney's fees pursuant to Title VII of the Civil Rights Act of 1964; and

(e)   Costs and interest from September 6, 2005 for Guido, and from January 10, 2006 to the present for Bender.

**On Plaintiffs' Pendent New York State Cause of Action**

(a)   An Award of compensatory damages in the amount of Five Hundred Thousand Dollars ($500,000) for each plaintiff; and

(b)   Costs and interest from September 6, 2005 for Guido, and from January 10, 2006 to the present for Bender;

**On Plaintiffs' Pendent New York City Causes of Action**

      (a)    An award of compensatory and/or punitive damages in the amount of Five

               Hundred Thousand Dollars ($500,000.00) for each plaintiff; and

      (b)    An award of reasonable attorneys' fees, together with costs of this action

               pursuant to New York City Local Law 59 of 1986 as amended by local Rule

               39 for 1991 §8-502(f);

together with such other and further relief as to the Court seems just and proper.

Dated: New Rochelle, New York
       December 14, 2007

                        Yours, etc.,

                        ROBERT DAVID GOODSTEIN, ESQ.

                        By: _____
                          Robert David Goodstein (RDG 5443)
                          *Attorneys for Plaintiff*
                        56 Harrison Street, Suite 401
                        New Rochelle, New York 10801
                        (914) 632-8382

# Plaintiff's Document
# Exhibit #1

EEOC Form 5 (5/01)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:

☐ FEPA

☐ EEOC

Agency(ies) Charge No(s):

and EEOC

State or local Agency, if any

| Name (Indicate Mr. Ms. Mrs.) | Date of Birth |
|---|---|
| MARGARET (PEGGY) ELLEN BENDER | 08/28/50 |

Street Address: 7 MADISON AVENUE  City, State and ZIP Code: NO. BELLMORE NY 11710

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| LOCAL #1, International Union of Elevator Constructors | OVER 3,000 | 718-767-7004 |

Street Address: 42-24 27TH ST  City, State and ZIP Code: LONG ISLAND CITY, NY 11101

| Name | No. Employees, Members | Phone No. with Area Code |
|---|---|---|
| | | |

Street Address:  City, State and ZIP Code:

### DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE    ☐ COLOR    ☐ SEX    ☐ RELIGION    ☐ NATIONAL ORIGIN

☑ RETALIATION    ☐ AGE    ☐ DISABILITY    ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest 05/16/05    Latest 01/10/06

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

03/14/06
Date

*Margaret E. Bender*
Charging Party Signature

NOTARY – When necessary for State or Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

*Margaret E. Bender*  03/14/06

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE  3/14/06
(month, day, year)

*Edward Saueracker*

EDWARD SAUERACKER
Notary Public, State of New York
No. 30-4827157
Qualified in Nassau County

Before getting into the issues experienced while employed by Local No. 1, IUEC. I thought you should be aware of the fact that I am married to an elevator constructor the past 23 years. He has been a member of Local No. 1 since February 1960, and served in various elected positions including Vice President/ Business Represented of the union from 1981-1989. I have made numerous friends within organized labor in general and Local No. 1 in particular. In order to gain labor leader experience, I served as an intern for Local No. 1 with President John G. Green. In addition to the many conventions and social functions I have experienced, I became familiar with working conditions, collective bargaining agreements, the annuity fund, and the pension & welfare fund. I also hold a Bachelors Degree in Labor Studies and a Masters Degree in Education. All of this made me more than an eligible candidate for the position offered by the current President of Local No. 1.

Upon being hired by the Elevator Constructors Union Local No.1, effective May 12 2004, President Ray Hernandez, "promised" that I would be assured of having a pension as long has he remained in office. He stated that sick days and time off for special needs were benefits of employment. Moreover, he made it very clear that I would be working directly for him, and Christina Guido would be assisting Secretary-Treasurer Carudo. All of this was also made very clear to Mr. Carudo who was present during the interview/hiring process.

Within a week, Mr. Carudo began giving me orders that was clearly not part of my responsibilities. He became abusive, and had me openly crying in front of other employees on at least two occasions within the first month of employment. I discussed the problem with the President, explaining that I had thirty-five years of professional office experience and that the behavior of Mr. Carudo is way out of line. It happens that Mr. Carudo is an elevator Constructor who only this past year began to work in an office. The President addressed the issue with Mr. Carudo, reminding him that Christina Guido works for him, not me. He also recommended that Mr. Carudo take some time off. Although he did not take time off, he did back off for about a week.

His abusiveness and nasty remarks increased and was witnessed by Union officers and staff members. It was during this period that I learned Mr. Kevin McCormick had his given resignation notice from the position I had been hired to fill. Mr. McCormick could no longer tolerate the abusiveness and nasty comments made by Mr. Carudo.

Within a very short period of time my experience, education, dedication, and work ethics became a proven asset to Local 1, recognized by officers and members alike. Employment for the most part became enjoyable and personally rewarding.

This unfortunately changed when Mr. Carudo and Christina Guido attended a training seminar in Maryland. Upon returning to work, Mrs. Guido reported an incident to the President that allegedly involved Mr. Carudo, on the last evening in Maryland. She alleged that Mr. Carudo knocked on her door at 12:30 AM, in an inebriated condition,

and made lewd unwanted advances. Upon return to the office, all she wanted was an apology. Instead, there was complete denial. The work atmosphere in the office immediately changed dramatically for the worse. It never returned to normal during the remainder of my employment.

The work atmosphere worsened as a member I had recently been introduced to, Linda Woods, arrived at the office to speak with the President. I soon learned that the purpose of her visit was to deny that she had once made a complaint to an Otis Shop Steward regarding unwelcome advances made by Mr. Carudo. She accused my husband and I of creating the story. This is an outrageous lie.

About fifteen after Linda Woods left the building, I was entering the Presidents office when he gave me a dirty look and said to Mr. Carudo, "You think you can f---in trust people around here, you can't." Another fifteen minutes passed when the President saw me stand at the receptionists' desk and said, "Peggy come here, I want to talk to you." I followed him into the Day Room, as told. He screamed at me for at least one hour about the accusations made by Linda Woods. He blamed my husband and I for Christina Guido going to the EEOC. He said the old man was right (former President John Green) you should only have your own people here, nobody else. While totally intimidated and crying hysterically, I repeatedly stated that I had nothing to do with the accusations made by Linda Woods, or with Christina Guido going to the EEOC. Anyone that was in the area couldn't miss hearing his screaming. In fact, at one point Bill Dounnigan walked through the room with a look of surprise/shock on his face.

I called my husband and made him aware of the accusations. He immediately called the President making his denial clear. Moreover, my husband informed the President that he had someone working for him (meaning me) that was a completely loyal, dedicated, and trustworthy employee.

Within a short time, the President called Margaret Walsh and I into his office. Vice President/Business Representative Fred McCourt was present. The President informed us of a change in rules which included administrative staff no longer be eligible for paid sick days, and personal phone calls in or out (including family members) was forbidden. We were also instructed not to erase phone call history. Until that was said, I had no idea that this could be done. I later informed Vice President's Ed Krull and Lenny Legotti of what had taken place.

Unfortunately, it became necessary for me to take a sick day and I learned that my pay had been docked. Upon asking the President if he did this because of the Tony/Christina situation he said, "That's right." I stated how I felt about this, including the unfairness of the action taken. At the first opportunity, I informed Mr. Krull and Mr. Legotti of the situation.

An Independent Investigator was hired by the President to look into the alleged complaints made by Christina Guido against Mr. Carudo. Shortly thereafter, it became common knowledge in the office that Christina Guido filed a complaint with

the EEOC. It is interesting to note that although the Independent Investigators report was completed, the President has continually refused to allow anyone, including elected union officers, to read it.

VP/Business Representative Ed Krull, informed me that I was being blamed for the action taken by Christina Guido with the EEOC. He also stated that the manner in which I have been treated is a disgrace.

While standing in front of my desk, VP/Business Representative Fred McCourt informed me that the President stated that I directed Christina Guido to bring charges against Mr. Carudo. The President based this on a 1991 sexual abuse trial involving family members of mine and four other young girls in which a Pediatrician was found guilty. I am angry and appalled that the President breached confidentiality by telling high-ranking union officers very personal and privileged information that we had discussed long before Christina Guido first brought her complaint to him. I must say again that the decision and action taken by Christina Guido was her own. I am appalled that the President would make such an assumption about me due to a personal tragedy my family members experienced.

Shortly after, Mr. McCourt told me that I should go into the Presidents office and pledge my allegiance to him. He followed this up with a phone call about a week later to see if I had. I sincerely believe that standing behind the loyalty, dedication, and trustworthiness I have shown speaks for itself. Nothing more need be said.

At least fifteen months had passed without a pay increase when I asked the President for a review. That was a Friday. The following Monday he called me into his office. Basically he said, "You want your review! No money!"

My daughters wedding took place on Friday, December 2, 2005. By now I was keenly aware of the open split and anger between elected union officers regarding the issue leading to Christina Guido filing charges with the EEOC. Upon considering the possibility of a problem arising during my daughters wedding reception, it seemed best for all concerned not to invite any officers. It was my sincere hope that each of them would understand the position taken.

On Monday, December 5, 2005 Mr. McCourt and the President entered my office. In a snickering manner Mr. McCourt said, "How was your daughter's wedding?" He looked at Mr. Hernandez, snickered again and they left the room.

My Brother-in Law passed away on December 27, 2005. The events I experienced at work became so intimidating that I knew my job would be in jeopardy if I had taken a day off to attend the funeral with my husband and family. On December 30th, I reduced the events to writing with the intent of submitting it to the President. I discussed this with Mr. Legotti. He advised me to hold on to it. A copy of the letter is attached.

Monday January 9th – While at work, the President phoned and instructed me to obtain information regarding an upcoming arbitration. Upon calling his cell phone with the requested information, as usual, he did not respond. Being aware of the urgency of the information, I waited awhile and tried again. This time the call was answered. He was very nasty and angrily stated that he was at a meeting in the office of Mr. Jim Mets, the attorney representing Local 1 in the complaint made to the EEOC by Christina Guido. Basically the conversation ended and there was no further communication with the President that day.

Tuesday January 10th –I had just ended an upsetting phone conversation with an irate girlfriend of a member when the President arrived and immediately called me into his office. The Day Secretary, Gary Riefenhauser, was sitting in the Presidents office as I entered. I had no idea that he was there to serve as a witness for the action about to take place. The President stated that he had to make a decision based on financial considerations of the union, and that I was going to be laid off. The President also informed me that he directed all four Vice President/Business Representatives to be present during the layoff. Feeling devastated, cheated and violated, I looked up and said, "You have to be kidding me." I then asked when this would take place and was told immediately. I was also told to hand in the pass and key to the office.

There was no two weeks notice, as the President would have expected if I had resigned. I wasn't even offered the opportunity to finish out the week. I was expected to believe that I had lost my job for union financial reasons in spite of the President having hired another female administrative staff member only four weeks before the layoff. It should be noted that Secretary Treasurer Carudo left the building prior to my employment being terminated and did not return until sometime after I was on my way home.

I called my husband at about 9:30 AM. He said he would drive to the union hall to bring me home. I packed my personal belongings, and requested a receipt for the office pass and key.

My husband arrived within the hour and was invited into the Presidents office. The president said he was sorry about the layoff. He explained that the International was cutting its budget and that it could no longer pay the salary of an organizer for Local 1. He said he made the layoff decision in order to pick up the salary of the organizer. At the end of the meeting between my husband and the President, I left the building for the last time.

The salary of the organizers is $96,000 annually. My salary was $52,000 annually. How could terminating the employment of only one staff member, especially the one with seniority, make up for the salary of an organizer?

By 3:00 PM of the same day, Mr. McCourt phoned executive board member's Mike Halpin and Charles Novak to tell them about the layoff before any rumors started. He

told them I was going on to bigger and better things, and that the President offered me two other positions that I turned down. This is completely untrue.

The following day, Mr. Halpin questioned Mr. Carudo about the layoff. He answered that, "He knew nothing about it." Since then he told members that I resigned to go on to bigger and better things, and that I left because I moved further east on Long Island. All of this is a lie.

A few days later, Mr. Legottee told me I was let go because of the "knock knock situation." This refers to the EEOC case regarding the accusations Christina Guido made against Mr. Carudo.

Upon learning that the EEOC contacted Linda Woods on Friday, January 6, 2006, the missing piece of the puzzle became clear. I was now aware of the real reason I was let go. Linda Woods must have called the President. The President met with the attorney handling the EEOC case on Monday. I was laid off on Tuesday. The President still doesn't believe that Linda Woods lied to him during a prior meeting and that the decision to file a complaint with the EEOC was made solely by Christina Guido.

I am left with no choice but to defend my integrity, my professional reputation, and myself.

# Plaintiff's Document Exhibit #2

EEOC Form 161-A (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE
### (CONCILIATION FAILURE)

To:  Margaret Bender                           From:   New York District Office
     7 Madison Avenue                                  33 Whitehall Street
     Bellmore, NY 11710                                5th Floor
                                                       New York, NY 10004

☐   On behalf of person(s) aggrieved whose identity is
    CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2006-01006 | Arlean C. Nieto, Investigator | (212) 336-3682 |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge.  The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you.  In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case.  This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
#### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____                              SEP 2 5 2007

Spencer H. Lewis, Jr.,                                 _____
Director                                               (Date Mailed)

Enclosures(s)

cc:   Richard H. Markowitz, Esq.              Robert D. Goodstein, Esq.
      Markowitz & Richman                     Goodstein & West
      110 North American Building
      121 South Broad Street                  56 Harrison Street
      Philadelphia, PA 19107                  Suite 401
                                              New Rochelle, NY 10801

Plaintiff's Document
Exhibit #3

This form is effected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

☐ FEPA
☒ EEOC

and EEOC

_____ State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Christina Guido | (914) 747-4070 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 52 Lake Shore Drive | Pleasantville, New York 10570 | 4/9/74 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME Local 1 Elevator Constructors Union | NUMBER OF EMPLOYEES, MEMBERS 20 | TELEPHONE (Include Area Code) (718) 767-7004 |
|---|---|---|

| STREET ADDRESS 47-24 27th Street | CITY, STATE AND ZIP CODE Long Island City, New York 11101 | COUNTY Queens |
|---|---|---|

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ AGE
☐ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)   LATEST (ALL)

July 6, 2005

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See Attached

RECEIVED
JUL 1 5 2005
EEOC-NYDO-CRTIU

Beatrice Murtagh No. 01MU5078472
Notary Public, State of New York
Qualified in Westchester County
My Commission Expires May 27, _____

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
|---|---|
| *Christina Guido* | *Christina Guido* |
| Date _____ Charging Party (Signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

EEOC FORM 5 (Test 10/94)

# CHRISTINA GUIDO
## EEOC CHARGE OF DISCRIMINATION - PARTICULARS

1. Ms. Guido has been employed by respondent Local 1 Elevator Constructors Union AFL-CIO for approximately 18 months as Office Manager/Bookkeeper at salary of $57,000 per year.

2. Ms. Guido's direct supervisor is Anthony Carudo, Secretary Treasurer of respondent.

3. On or about May 10, 2005, Ms. Guido was sexually assaulted by her supervisor Mr. Carudo. Mr. Carudo, using a ruse, entered Ms. Guido's hotel room during a business trip, attempted to kiss and touch her and refused to leave her hotel room.

4. Ms. Guido immediately reported this assault to the union, resulting in an investigation to be conducted by Joseph Licata Esq. To date, Ms. Guido has not been informed as to whether or not the investigation has been concluded although she has written to the union's attorney, Mr. James Metz, requesting a copy of the transcript of her statement along with any recommendations made by Mr. Licata.

5. Further, Local 1 does not have an anti-sexual harassment policy applicable to employees of Local 1 such as Ms. Guido. A sexual harassment policy is available to the union members of Local 1, no policy is applicable to the employees. Ms Guido was not informed that the policy applicable to union members was applicable to her as employee.

6. Further, the policy for members requires that the member report the sexual harassment to the Union Secretary Treasurer. That individual, Mr. Carudo, is the individual who sexually assaulted Ms. Guido.

7. On information and belief, Ms. Guido is not the first female employee who was sexually harassed by Mr. Carudo. Thus the union has been on notice regarding his activities towards both female employees and female members of the union. No action was taken.

# Plaintiff's Document
# Exhibit #4

# NOTICE OF RIGHT TO SUE
## *(CONCILIATION FAILURE)*

| | |
|---|---|
| To: Christine Guido<br>52 Lake Shore Drive<br>Pleasantville, NY 10570 | From: New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 160-2005-03186 | Arlean C. Nieto,<br>Investigator | (212) 336-3682 |

## TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

## - NOTICE OF SUIT RIGHTS -
### *(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____

**Spencer H. Lewis, Jr.,**
**Director**

**SEP 2 5 2007**

*(Date Mailed)*

Enclosures(s)

cc:   Richard H. Markowitz, Esq.
Markowitz & Richman
110 North American Building
121 South Broad Street
Philadelphia, PA 19107

Robert D. Goodstein, Esq.
Goodstein & West
56 Harrison Street
Suite 401
New Rochelle, NY 10801