UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MARGARET BENDER and
CHRISTINA GUIDO,

                      Plaintiffs,

                - against -

LOCAL 1, INTERNATIONAL UNION
OF ELEVATOR CONSTRUCTORS,

                      Defendants.
-------------------------------------------------------------x

07 Civ. 11428 (CLB)

***Memorandum and Order***

Brieant, J.

      Before this Court in this action for violations of Title VII of the Civil Rights Act and the New York Human Rights Law is a motion for partial summary judgment with respect to the federal claim pursuant to Fed. R. Civ. Pro. 56, and dismissal without prejudice of pendent state and municipal claims pleaded within our supplemental jurisdiction. The motion was filed on January 28, 2008 (Doc. No. 4). Opposition papers were filed on February 7, 2008 (Doc. No. 5). Reply papers were filed on February 19, 2008 (Doc. No. 7). A record of oral argument on the issues was held at the request of the Court on February 29, 2008, before Magistrate Judge Lisa M. Smith and considered.

*Background*

      The following facts are presumed true for purposes of this motion. Margaret Bender and Christina Guido (collectively the "Plaintiffs") bring this action against Local 1, International Union of Elevator Constructors (the "Defendant") for violations of Title VII, as well as N.Y. Human Rights Law. Ms. Guido was employed by Defendant as a Office Manager/Bookkeeper

1

from March 2004 through September 2005.  Her direct supervisor was Anthony J. Carudo, the Secretary-Treasurer of Defendant.  Ms. Bender was employed by Defendant as a secretary from May 2004 through January 2006.  She worked directly for the Local Union President and Business Manager Raymond Hernandez (hereinafter "President Hernandez").

The complaint alleges that on or about May 10, 2005, Mr. Carudo sexually assaulted Ms. Guido by "using a ruse" to enter her hotel room during a business trip and attempting to kiss and touch her and refusing to leave her room.  Subsequently, Ms. Guido reported the incident to President Hernandez, and requested only that she receive an apology from Mr. Carudo.  Mr. Carudo denied the incident occurred.  Ms. Guido also reported the incident to then Vice-President and Business Agent Lenny Legotte.  After Ms. Guido filed her formal complaint, Plaintiffs contend that "the work atmosphere in the office immediately changed dramatically for the worse" and affected other staff members, including Ms. Bender. (Compl. ¶¶ 11, 24.) Specifically, Ms, Guido asserts that "Union senior officials retaliated against [her] by calling [her] discriminatory names as 'f..king cunt' and 'bitch' in front of her co-workers." (Compl. ¶ 11.)  An investigation of Plaintiff Guido's complaint was conducted by an independent investigator/attorney retained by President Hernandez.  Plaintiff Guido alleges that once the report was complete, President Hernandez refused to allow anyone, including Ms. Guido, to read it.

Defendant has a sexual harassment policy that is available to the Union members, but not specifically to the employees of Local 1.  In any event, the policy requires the member to report

2

any alleged claims of sexual harassment to Mr. Carudo, Ms. Gudio's direct supervisor and the alleged harasser.

Plaintiff Bender's husband is a member of the Local 1 Union. It is alleged that after Plaintiff Guido filed her complaint, Plaintiff Bender and her husband were accused of creating a story that a member of the Union, Linda Woods, made a complaint regarding unwelcomed advances and sexual harassment against her by Mr. Carudo, in order to persuade Ms. Guido to file a formal complaint. It is also alleged that President Hernandez blamed Plaintiff Bender and her husband for Plaintiff Guido filing the complaint with the EEOC. After such accusations were made, it is contended that President Hernandez changed certain employment related rules, providing that (1) administrative staff would no longer be eligible for paid sick days; (2) personal phone calls in or out (including family members) were forbidden and; (3) phone call history was not to be erased. Thereafter, Plaintiff Bender took a sick day and her pay was docked for the day. It is alleged that Plaintiff Bender asked President Hernandez if he had made these changes and docked her pay because of the Carudo/Guido situation to which the President responded "That's right". (Compl. ¶ 32.)

The complaint alleges that Plaintiff Bender had gone approximately fifteen months without a pay increase or a review and approached President Hernandez on this issue, to which he responded, "You want your review! No money!". (Compl. ¶ 34.)

On December 3, 2005, Plaintiff Bender addressed a letter to President Hernandez concerning the retaliatory conduct taken against her since Ms.Guido's EEOC complaint was filed. On January 9, 2006, Ms. Bender was informed by President Hernandez that he was in a meeting with counsel concerning Ms. Guido and the EEOC. On January 10, 2006 Ms. Bender was called into President Hernandez's office. The Union's Day Secretary, Gary Riefenhauser was also present. The President stated that based on financial considerations of the Union, Ms. Bender was to be laid off immediately. Plaintiff Bender was then told to hand over her pass and key to the office. It is alleged that a few days later, incoming Union President Legotte told Ms. Bender that she was laid off because of the "knock knock situation". (Compl. ¶ 41). Additionally, Plaintiffs' complaint alleges that four weeks later, President Hernandez hired receptionist Sue Noble. (Compl. ¶ 39.) Plaintiff Bender asserts that she was terminated in retaliation on the belief that she provided assistance or support to Ms. Guido in filing the harassment complaint.

Defendant moves for partial summary judgment as to Plaintiffs' Title VII claims alleging that Local 1 cannot be a defendant, as it does not meet the definition of "employer" under the statute.

*Discussion*

   *Summary Judgment Standard*

Fed. R. Civ. P. 56(c) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986). "The party against whom summary judgment is sought, however, 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *see* Fed. R. Civ. Pro. § 56(e) ("adverse party may not rest upon the mere allegations or denials of his pleading, but his response...must set forth specific facts showing that there is a genuine issue for trial").

*"Employer" Under Title VII*

Title VII defines the term "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). "When a plaintiff brings a Title VII action against a union in its capacity as an employer, the plaintiff must demonstrate that the union meets the Title VII definition of 'employer.'" *Kern v. City of Rochester*, 93 F.3d 38 (2d Cir. 1996).

Title VII defines an employee as "an individual employed by an employer." 42 U.S.C. §2000e(f). "Although a Director may accept duties that make him also an employee, a Director

5

is not an employee because he draws a salary. Rather, the primary consideration is whether an employer-employee relationship exists." *Kern*, 93 F.3d at 47.  In assessing whether a director has assumed the duties that make him an employee for purposes of the anti-discrimination laws, our Court of Appeals has elucidated a three-part test that asks: (1) whether the Director has undertaken employee duties; (2) whether the Director was regularly employed by a separate entity; and (3) whether the Director reported to someone higher in the hierarchy.  *See Drescher v. Shatkin*, 280 F.3d 201, 203 (2d Cir. 2002) (citing *EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1539 (2d Cir. 1996).  Thus, appearance on the employer's payroll alone is not sufficient to deem one an "employee" for purposes of §2000e(b).  *See Walters v. Metro. Educ. Enters.*, 519 U.S. 202, 211-12 (1997).

In her affidavit, Plaintiff Guido states that during her employment as bookkeeper of Local 1, she was directly involved with payroll services.  (Guido Aff. ¶ 2.)  She names fourteen (14) individuals who were "Employees" during the calendar years 2004-2005.  (Guido Aff. ¶ 5.) She goes on to name "the members of the Board of Trustees (four (4) individuals; Michael Halpin, Steven Mazza, Charles Novack and Edward O'Hare), the members of the Examining Board (three (3) individuals; William Bulger Jr, Denis Kilduff and Denis O'Neill), the Recording Secretary, Richard Loeb, and the Warden, Greg Moschetti", and asserts that because these individuals had taxes withheld from their payments, received W-2 forms, and were "listed as employees on Defendant's LM2 form for 2005", they should be considered "employees" for the purposes of Title VII.  (Guido Aff. ¶ 6.)  The Court does not agree with Plaintiffs' assessment.

Although the individuals named by Plaintiff are listed in the stated capacities on Local 1's LM-2 form for the 2005 and 2006 calendar years, applying the test established by our Court of Appeals, it is clear that these named Executive Board members cannot be classified as "employees" for purposes of Title VII.  The Board of Trustees of the Local 1 Union meets with the Secretary-Treasurer approximately four (4) times a year during the calendar quarter to review the income and expenses of the Union.  (Mazza Aff. ¶ 6.)  The Examining Board meets eight (8) times per year to interview applicants for membership in the Union and holds an additional ten (10) meetings per year, once a month from September through June.  (Kilduff Aff. ¶¶ 4, 5, 6.) These functions can hardly be described as traditional employment duties, and there is no indication that any member performed duties akin to maintaining records, preparing financial statements, managing the office, or the like.  *See Kern*, 93 F.3d at 47.  Additionally, there is no indication that any of these officers were responsible to anyone but themselves, as they were also members of the Executive Board.  *Id*.

Finally, Steve Mazza, a member of Local 1's Board of Trustees, affirms that he has been employed as a full time service mechanic by Schindler Elevator Corp, a separate entity, for the past ten (10) years, and affirms that each member of the Board of Trustees holds similar full time employment with separate elevator companies.  (Mazza Aff. ¶¶ 2, 7.)  Denis Kilduff, a member of Local 1's Examining Board, affirms that he was employed full time as an elevator mechanic for Otis Elevator Company, an entity separate from Local 1, for twenty-one (21) years, until April 2006 when he was laid off, at which time he began working full time as a construction mechanic for Fujitech New York Inc., also a separate entity.  (Kilduff Aff. ¶¶ 2, 3.)  Mr. Legotte,

the current President-Business Manager of the Union, affirms that no members of the Board of Trustees, Examining Board, the Recording Secretary and the Warden are employees of the Union as each retains full time, permanent employment by separate elevator companies or similar entities. (Legotte Aff. ¶¶ 10, 11, 12, 13.) Plaintiffs fail to demonstrate that a traditional employee-employer relationship, as defined by Title VII, existed between Local 1 and the named officers.

Contrary to Plaintiffs' belief, the W-2 and payroll statements of Local 1 would do little to change the outcome and are not documents necessary to deciding the issue. However, Defendant has provided the Court with a copy of its "LM-2 Labor Organization Annual Report" for the years 2006 and 2005. Although having little to no bearing on the "employee" status of those listed, the documents lend additional support to the conclusion that the persons in the positions of member of the Board of Trustees, Examining Board, the Recording Secretary and Warden are not "employees" within the meaning afforded by Title VII. These documents establish that members in these positions only received a few thousand dollars in compensation for the entire calendar year. The affidavits of individual members establish that members of these Boards were only reimbursed from the Union on a *per diem* basis for the days that the Boards met throughout the calendar year. (Legotte Aff. ¶¶ 10, 11, 12, 13.) With the exception of one Board of Trustees member in 2005, the compensation to these named officers was less than ten-thousand dollars ($10,000) and in most cases, less than five-thousand dollars ($5,000). This lends additional support showing that these members held regular employment outside of the positions held on the Local 1 boards. Additionally, the LM-2 lists these positions under "All

Officers and Disbursements to Officers" and not under "Disbursements to Employees", as Plaintiffs contend. These records reflect, and I find, that Local 1 had less than fifteen (15) employees in the relevant years.

Thus, by Plaintiff Guido's own affidavit, it has been established that, during the calendar years 2004 and 2005, Local 1 had only fourteen (14) "employees", as the term is defined under Title VII. The four (4) members of the Board of Trustees, three (3) members of the Examining Board and Recording Secretary and Warden, were not "employees" for the purposes of Title VII. These persons made up the Executive Board of Local 1, held regular employment with a separate entity, did not part take in the administration or management of Local 1, and only received *per diem* compensation for the days in which their Boards met.

Consequently, the Court finds that Plaintiffs have failed to demonstrate that a factual dispute exists with regard to whether Defendant employed the requisite fifteen or more employees necessary for it to be subject to Title VII.

*State Law Claims*

Accordingly, as all federal claims have been dismissed prior to trial, we exercise our discretion and dismiss plaintiff's remaining state law claims without prejudice. *Cushing v. Moore*, 970 F.2d 1103, 1110 (2d Cir. 1992).

*Conclusion*

For all of the foregoing reasons, Defendant Local 1 Union's motion for summary judgment is granted, and the Court declines to exercise supplemental jurisdiction with respect to Plaintiffs Bender's and Guido's state law claims. The action is dismissed with prejudice as to the Title VII claims, and without prejudice as to the state law claims, and without costs. The clerk shall file a final judgment.

X

      X

          X

              X

                  X

                      X

                          X

SO ORDERED.

Dated: White Plains, New York
      April 9, 2008

                                                                           */s/ Charles Brieant*
                                                    Charles L. Brieant, U.S.D.J.